UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

I.C., a minor, by YVONNE CHANDLER,

                    Plaintiff,            1:14-CV-1363
                                       (GTS/WBC)
v.

COMMISSIONER OF SOCIAL SECURITY

                    Defendant.
_____

APPEARANCES:                          OF COUNSEL:

LEGAL AID SOCIETY OF NORTHEASTERN    SHUB NIGAM MCTAGUE, ESQ.
NEW YORK, INC.                          MICHAEL J. TELFER, ESQ.
  Counsel for Plaintiff
55 Colvin Ave.
Albany, NY 12206

U.S. SOCIAL SECURITY ADMIN.         ROBERT R. SCHRIVER, ESQ.
OFFICE OF REG'L GEN. COUNSEL-REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## <u>REPORT and RECOMMENDATION</u>

      This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 17.)  This case has proceeded in accordance with General

Order 18.

      Currently before the Court, in this Social Security action filed by Yvonne

Chandler on behalf of her minor daughter, I.C. ("Plaintiff") against the Commissioner of

Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), are

the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 12, 16.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

I.C. was born on May 7, 2005.  (T. 112.)  At the time of her hearing, she was a school-age child.  (T. 26.)  I.C.'s alleged disability consists of pica, mood disorder, and attention deficit hyperactive disorder ("ADHD").  (T. 182.)

### B.    Procedural History

On September 16, 2011, Plaintiff applied for Supplemental Security Income on I.C.'s behalf.  (T. 63.)  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On May 7, 2013, Plaintiff appeared before the ALJ, Thomas Grabeel.  (T. 41-62.)  On June 5, 2013, ALJ Grabeel issued a written decision finding I.C. not disabled under the Social Security Act. (T. 20-40.)  On October 9, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law.  First, the ALJ found that I.C. was a "school-age child" at the time of filing and a "school-age child" at the time of the hearing pursuant to 20 C.F.R. § 416.926a(g)(2).  (T. 26.)  Second, the ALJ found that I.C. had not engaged in substantial gainful activity since the application date.  (*Id.*)  Third, the ALJ found that I.C.

suffered from the severe impairments of ADHD, mood disorder, and an eating disorder. (*Id.*)  Fourth, the ALJ found I.C. did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I ("the Listings").  (*Id.*)  Fifth, the ALJ found I.C. did not have an impairment or combination of impairments that functionally equaled an impairment set forth in the Listings.  (T. 26-35.)  Sixth, and finally, the ALJ concluded I.C. had not been disabled, as defined by the Social Security Act, since September 16, 2011, the date her application was filed.  (T. 35.)

## II.    THE PARTIES' BRIEFINGS

### A.    Plaintiff's Arguments

Generally, in support of her motion for judgment on the pleadings, Plaintiff makes four arguments.  First, Plaintiff argues the ALJ erroneously determined that I.C. did not meet Listing § 112.11: ADHD. (Dkt. No. 12 at 9-13 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ did not properly weigh the opinion evidence from the treating sources.  (*Id.* at 13-16.)  Third, Plaintiff argues the ALJ erred in evaluating the domains of: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating to others, and (4) caring for oneself.  (*Id.* at 16-22.)  Fourth, and lastly, Plaintiff argues the ALJ erred in evaluating I.C.'s credibility. (*Id.* at 22-23.)

### B.    Defendant's Argument

Generally, in support of her cross-motion for judgment on the pleadings, Defendant makes four arguments.  First, Defendant argues the ALJ properly weighed opinion evidence of Cheryl Alban, LCSW and Yousuf Ahmad, M.D.  (Dkt. No. 16 at 4-7 [Def.'s Mem. of Law].)  Second, Defendant argues the ALJ properly weighed other

evaluations and opinions of record.  (*Id.* at 7-11.)  Third, Defendant argues the ALJ

properly found that I.C. had less than marked limitations in four domains.  (*Id.* at 11-16.)

Fourth, and lastly, Defendant argues the ALJ properly assessed Plaintiff's credibility. (*Id.*

at 16-18.)

## III.    RELEVANT LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine de novo

whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v.

Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the

Commissioner's determination will only be reversed if the correct legal standards were

not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*,

817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether

the ALJ applied correct legal principles, application of the substantial evidence standard

to uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct

legal principles."); *see Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v.

Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla,"

and it has been defined as "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.

Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one

rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford

v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs*., 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. *See* 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y.

2003); *Ramos v. Barnhart*, No. 02-CV-3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. *See* 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, the second step of the test next requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. *See* 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. In essence, "a child is [disabled under the Social Security Act] if his impairment is as severe as one that would prevent an adult from working." *Zebley v. Sullivan*, 493 U.S. 521, 529, 110 S. Ct. 885, 890 (1990).

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). *Id.* Equivalence to a listing can be either medical or functional. *See* 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement

is satisfied, the child will be deemed disabled. *See* 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a child functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for [oneself]; and (vi) [h]ealth and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate

expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## IV.    ANALYSIS

### A.    Listing § 112.11: Attention Deficit Hyperactivity Disorder

At step three an ALJ must determine whether a plaintiff has an impairment, or combination of impairments, that meets or medically equals the severity of a listing, or that functionally equals the listing. 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925, 416.926) ("the Listings").  If a plaintiff has an impairment or combination of impairments that meets or medically equals the severity of, or functionally equals, the listings, and it has lasted or is expected to last for a continuous period of at least twelve months, she is presumed to be disabled.  *Id.* at § 416.924(d)(1).

Listing § 112.11 is the listing encompassing ADHD.  ADHD is a condition "(m)anifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity."  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 112.11. In order to meet the listing, a plaintiff must meet two sets of criteria.  Under the "A" criteria, the plaintiff must show "(m)edically documented findings of all three of the following: (1) marked inattention; (2) marked impulsiveness; and (3) marked hyperactivity."  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 112.11.  Under the "B" criteria, the plaintiff must show at least two of the following impairments: (1) marked impairment in age-appropriate cognitive/communicative function; (2) marked impairment in age-appropriate social functioning, (3) marked impairment in age-appropriate personal functioning; or (4) marked difficulties in maintaining concentration, persistence, or pace.  20 C.F.R., Pt. 404, Subpt. P, App. 1 §§ 112.02, 112.11.

Here, the ALJ determined that I.C. did not have an impairment, or combination of impairments, that met or medically equaled Listing §§ 112.04, 112.07, or 112.11. (T. 26.) Plaintiff argues the ALJ erred in his step three determination because he failed to refer to the specific criteria set for in the Listings, specifically Listing § 112.11. (Dkt. No. 12 at 9-10 [Pl.'s Mem. of Law].)

An ALJ "should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment;" however, the absence of an express rationale for an ALJ's conclusion does not prevent a court from upholding the conclusion so long as we are "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Berry,* 675 F.2d 464 at 469 (2d Cir. 1982). Plaintiff relies on *Stover v. Comm'r of Soc. Sec.,* No. 1:04-CV-1467, 2008 WL 4283421, at *8 (N.D.N.Y. Sept. 16, 2008) in support of her argument. (Dkt. No. 12 at 9 [Pl.'s Mem. of Law].) In *Stover* the Court found error in the ALJ's step three analysis because the ALJ's decision failed to mention Listing § 112.11 or apply any of the evidence to the requirements of the Listing. *Stover*, 2008 WL 4283421, at *8. However in the case at hand, the ALJ specifically mentioned Listing § 112.11 and the ALJ's rationale for the ALJ's step three conclusion can be reasonably discerned from the remainder of the ALJ's decision.

Although the ALJ might have been more specific in detailing the reasons for concluding that I.C.'s ADHD did not satisfy a listed impairment in his step three analysis, other portions of the ALJ's detailed decision demonstrate that substantial evidence supports this part of the ALJ's determination. For example, elsewhere in the ALJ's decision he thoroughly discussed Plaintiff's school records which included evidence

regarding Plaintiff's self-management skills and social skills.  (T. 29.)  The ALJ also discussed Listing § 112.11 criteria in the context of his discussion of the domains.  For example, in the domain of attending and completing tasks the ALJ discussed evidence regarding Plaintiff's attention and concentration.  (T. 31.)

Accordingly, because this is not a case "in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record," *Berry,* 675 F.2d. at 469, there is no need for us to remand this case to the ALJ for clarification.  *See Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (per curiam) (noting that when "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability"); *Salmini v. Comm'r Soc. Sec.,* 371 Fed.Appx. 109 (2d Cir March 25, 2010); *Hairston ex rel. S.N. v. Comm'r of Soc. Sec.,* 52 F. Supp. 3d 657, 672 (S.D.N.Y. 2014) ("The brevity of the ALJ's Step Two analysis does not, in and of itself, necessitate remand.")

### B.    Treating Physician, Yousef Ahmad, M.D.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 416.927(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the

treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 416.927(c)(2). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

I.C. received treatment from Dr. Ahmad and other providers at Ellis Mental Health Services. In July of 2011 Karen Edwards-D'Alessandro, LCSW-R conducted an initial intake. Ms. D'Allessandro noted I.C. was "very polite and well mannered." (T. 455.) She further observed I.C.'s concentration was "very good," but reported to be impaired in school. (*Id.*) She observed I.C.'s memory was intact and her insight, judgment and impulse control were "fair to poor." (*Id.*)

In August of 2011, Dr. Ahmad observed I.C. was restless and uncooperative. (T. 456.) He further observed I.C.'s mood was irritable, her thought processes were digressive, her thought content was impoverished, she was cognitively alert, her concentration was impaired, and her attention was distractible. (*Id.*) Dr. Ahmad noted I.C.'s insight was poor, and her impulse control was "fair to poor." (*Id.*) Notations indicated that Dr. Ahmad provided medical management in September of 2011. (T. 452.)

On February 8, 2012, I.C. met with Cheryl J. Alban, LCSW for a therapy session. At that time a mental status exam indicated I.C.'s behavior was cooperative, her attention was fair, her insight was poor, and her motivation and judgment were fair. (T. 444.) I.C. informed Ms. Alban that she no longer wet herself. (*Id.*) Ms. Alban observed

that I.C. required multiple prompts to clean up her Play-Doh activity. (*Id.*) Ms. Alban also observed I.C. was anxious, but made good eye contact and had good long term memory. (*Id.*) Ms. Alban observed that I.C.'s ability to comply with limits during the session was limited and she was "somewhat rigid" in following her own agenda. (*Id.*) At that time, Dr. Ahmad noted I.C. was "doing good." (T. 451.) Notations from Dr. Ahmad also dated February 8, 2012, indicated I.C. had "no evidence of persisting ADHD." (T. 443.) Dr. Ahmad noted that I.C.'s mother reported medication improved I.C.'s mood and that I.C.'s school and home performance were "very good." (*Id.*)

In March of 2012, I.C. met with Ms. Alban. A mental status exam indicated I.C.'s behavior was cooperative, her attention was fair, her insight was poor, and her motivation/judgment/frustration tolerance were fair. (T. 446.) Ms. Alban observed I.C. made eye contact and had difficulty maintaining personal space. (*Id.*) I.C. reported that school was going well and she no longer wet herself. (*Id.*) Ms. Alban observed I.C. was "very focused" on a play activity. (*Id.*)

In March of 2012, Dr. Ahmad noted there were no significant changes from I.C.'s last visit, and I.C. continued to have some sleep issues; however, her bedwetting had stopped and I.C. was "doing well" at school. (T. 448.) Dr. Ahmad observed I.C. had impulsivity and some defiance with mood instability. (*Id.*)

Dr. Ahmad and Ms. Alban completed a Psychiatric Evaluation Form dated July 11, 2012. (T. 458-463.) The form indicated Plaintiff's participation was "very inconsistent" and she attended four counseling sessions over the course of nine months. (T. 458.) Dr. Ahmad and Ms. Alban opined I.C. experienced "marked"

inattention, impulsiveness, and hyperactivity. (T. 459-460.)[1] They also opined I.C. had

"marked" difficulty in: getting along with family; cooperating with others; independent

functioning; persistence in tasks; her ability to complete tasks in a timely manner; and

her ability to sustain tasks without undue interruptions or distractions. (T. 461.)

The ALJ provided the July 2012 assessment "very little weight." (T. 29.) The ALJ

reasoned the form was "not an official Agency form" and was completed at the request

of Plaintiff's counsel. (*Id.*) The ALJ further noted the form indicated poor compliance

with treatment and Plaintiff only attended four treatment sessions. (*Id.*) The ALJ

reasoned the medical opinions where inconsistent with treatment notes which indicated

I.C. was doing well and had normal mental status examinations. (*Id.*) The ALJ also

reasoned the medical opinion was inconsistent with school records. (*Id.*)

Plaintiff argues the ALJ failed to provide controlling weight to the medical source

opinion of Dr. Ahmad. (Dkt. No. 12 at 11-13 [Pl.'s Mem. of Law].) Although Plaintiff is

correct in her assertion that there is no Social Security Ruling or directive that a

psychiatric assessment must be completed on an official form, the ALJ did not rely on

the format of the assessment alone in making his weight determination. (Dkt. No. 12 at

12 [Pl.'s Mem. of Law].) In weighing the opinion of Dr. Ahmad and Ms. Alban, the ALJ

properly relied on the factors outlined in the Regulations in making his determination,

specifically, the opinion was not supported by treatment notes and inconsistent with

other evidence in the record. *See* 20 C.F.R. §§ 416.927(c)(3), 416.927(c)(4).

Under the substantial evidence standard of review, it is not enough for Plaintiff to

merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in

---

[1]      The form defines "marked" as more than moderate and less than extreme, and a marked
limitation is one where the degree of impairment seriously interferes with the person's ability to function
independently and appropriately and effectively and on a sustained basis. (T. 460.)

the record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).  In support of her argument, Plaintiff cites treatment notes from I.C.'s pediatrician.  (Dkt. No. 12 at 13 [Pl.'s Mem. of Law].)  Although the treatment notations from I.C.'s pediatrician noted I.C.'s hyperactivity and impulsivity, Plaintiff failed to prove that no reasonable factfinder could have reached the ALJ's conclusion.  The ALJ complied with the Regulations and provided evidence from the record to support his conclusion; therefore, remand is not recommended.

### C.      Weight to Medical Providers, Non-medical Providers, and Teachers

The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source.  20 C.F.R. § 416.927(c)(1)-(6).

Plaintiff argues the ALJ erred in his evaluation of other opinion evidence in the record provided by: Dr. Ahmad; Kenneth Kroopnick, M.D.; Dennis Noia, M.D.; D. Bostic, Pediatrics; M. Marks, Psychology; and teacher Melissa Martin.  (Dkt. No. 12 at 13-16 [Pl.'s Mem. of Law].)  Plaintiff's argument appears to be two fold.  Plaintiff appears first to argue the ALJ erred in his analysis because he failed to assign specific weight to the opinions of Drs. Kroopnick, Noia, Bostic, Marks and teacher Martin.  (Dkt. No. 12 at 13-14 [Pl.'s Mem. of Law].)  Second, Plaintiff appears to argue the ALJ erred in relying on the medical opinion of Dr. Noia and the ALJ erred in affording teacher J. Salimore's opinion "little weight."  (*Id.* at 14-16.)

First, an ALJ is required to articulate the weight that is given to a treating doctor's conclusions. *See Caserto v. Barnhart,* 309 F.Supp.2d 435, 444–45 (E.D.N.Y.2004) (citing *Schisler v. Sullivan,* 3 F.3d 563, 567 (2d Cir.1993) for the proposition that "the ALJ is required to articulate the weight that is given to treating doctor's conclusions"). As discussed supra, the ALJ did not err in affording Dr. Ahmad's medical source opinion "little weight."

Plaintiff argues the ALJ failed to recognize her pediatrician, Dr. Kroopnick, and failed to provide any reason for discrediting his opinions. (Dkt. No. 12 at 13 [Pl.'s Mem. of Law].) Although Dr. Kroopnick provided pediatric care for Plaintiff, the majority of her medical treatment was provided by Megan McCabe, a nurse practitioner. Although a nurse practitioner may be a treating health care provider, not all treating health care providers are "treating sources" under the applicable Social Security Regulations. A "treating source" is defined as the plaintiff's "own physician, psychologist, or other acceptable medical source who provides [plaintiff], or has provided [plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [plaintiff]." 20 C.F.R. § 416.902. There are five categories of "acceptable medical sources." 20 C.F.R. § 416.913(a). Nurse practitioners are not included within those categories. Nurse practitioners are listed among the "other medical sources," whose opinion may be considered as to the severity of a plaintiff's impairment and ability to work, but their conclusions are not entitled to any special weight. 20 C.F.R. § 416.913(d)(1). The ALJ's decision does refer to observations made by Nurse McCabe. (T. 28.) Therefore, although the ALJ does not mention Dr.

Kroopnick by name, he was aware I.C. received care from his office and properly discussed the care she received there, primarily performed by Nurse McCabe.

Defendant counters that medical records from Dr. Kroopnick predate the relevant time period in this case and therefore the ALJ was not required to consider them. (Dkt. No. 16 at 6 [Def.'s Mem. of Law].) The Regulations state that "[b]efore [an ALJ] make[s] a determination that [a plaintiff is] not disabled, [the ALJ] will develop [plaintiff's] complete medical history for at least the 12 months preceding the month in which [plaintiff] file[s] [an] application unless there is a reason to believe that development of an earlier period is necessary or unless [plaintiff] say[s] that [her] disability began less than 12 months before [she] filed [her] application." 20 C.F.R. § 416.912(d). The Regulations further explain that a complete medical history begins the month a plaintiff alleges her disability began. *Id.* at § 416.912(d)(2). Plaintiff alleged her disability began January 1, 2009. (T. 23.) Here Plaintiff filed her application in September of 2011 and the treatment notes from Dr. Kroopnick's office span from 2006 to 2012. The specific treatment notes cited by Plaintiff date from May and June of 2010, which fall slightly outside the twelve month period before her application, but postdate her alleged onset date. Regardless of the timing of the notations, the ALJ did refer specifically to Nurse McCabe's treatment notes and clearly took exam observations into consideration in making his determination. Elsewhere in his decision the ALJ referred to "Exhibit 3F" which encompassed treatment notes and observations made by Nurse McCabe and Dr. Kroopnick. (T. 27, 28, 30, 33.)

Therefore, although the ALJ did not provide a specific weight to Dr. Kroopnick or Nurse McCabe, the ALJ specifically acknowledged medical treatment notations and

observations made by the providers. The ALJ's decision also clearly indicated that he took the provider's observations into consideration in making his determination. Further, the majority of the treatment notations (specifically those highlighted by Plaintiff) where provided by Nurse McCabe, a non-medical source, and therefore not entitled to special weight under the Regulations. Given these factors, the ALJ did not err in his treatment of medical evidence supplied by Plaintiff's pediatric health care providers, Dr. Kroopnick and Nurse McCabe.

Plaintiff next argues the ALJ erred in his reliance on consultative examiner, Dr. Noia's medical source opinion and the opinion should be given "no weight." (Dkt. No. 12 at 12-14 [Pl.'s Mem. of Law].) Dr. Noia opined Plaintiff was capable of attending to, following, and understanding most age appropriate directions. (T. 429.) Dr. Noia opined Plaintiff was able to complete most age appropriate tasks, maintaining moderately appropriate social behavior, responding appropriately to changes in the environment, learning at her level of cognitive functioning, and asking questions and requesting assistance in age appropriate manner. (T. 429-430.) Dr. Noia opined Plaintiff appeared capable of being aware of dangers and taking precautions and interacting moderately well with peers and adults. (T. 430.)

The ALJ did not provide a specific weight to Dr. Noia's medical opinion, however, it is apparent from the decision that the ALJ relied heavily on his opinion in making his determination. The ALJ determined Dr. Noia's opinion was supported by his evaluation, supported by Plaintiff's mental health providers (Dr. Ahmad and Ms. Alban), and supported by teacher observations (Ms. Martin). (T. 29.) An ALJ "is entitled to rely upon the opinions of both examining and non-examining State agency medical

consultants," particularly where the consultant's opinion is supported by the weight of the evidence. *Garrison v. Comm'r of Soc. Sec.*, No. 08-CV-1005, 2010 WL 2776978 at *4 (N.D.N.Y. June 7, 2010). Although Dr. Noia's medical source opinion was inconsistent with the medical source statement provided by Dr. Ahmad and Ms. Alban, Dr. Noia's medical source statement was consistent with Dr. Ahmad and Ms. Alban's treatment notations and observations, as discussed by the ALJ. (T. 29.) Therefore, for the reasons stated herein, the ALJ did not err in relying on the medical source statement of Dr. Noia in making his determination.

Plaintiff's remaining arguments essentially claim the ALJ erred in failing to discuss evidence which Plaintiff argues supports her claim of disability. (Dkt. No. 12 at 15 [Pl.'s Mem. of Law].) Plaintiff further makes the conclusory argument that the ALJ committed legal error because he failed to mention Barbara Samuels, M.D. or teacher Tiffany Carroll. (*Id.* at 14, 16 [Pl.'s Mem. of Law].) "An ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." *LaRock ex. rel. M.K. v. Astrue,* No. 10–CV–1019, 2011 WL 1882292, *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur,* 722 F.2d at 1040 (internal quotation marks omitted)). Here, the ALJ did take into consideration evidence supplied by Plaintiff's teachers, Ms. Martin and J. Salimore. (T. 20-35.)[2] Further, Ms. Carroll's evaluations were located in Exhibit 3F (T. 369-370); therefore, the ALJ may not have mentioned Ms. Carroll by name, but the decision indicated he was aware of her evaluation in his decision making. Dr. Samuels reports were also included in Exhibit 3F, which the ALJ referred to often in his decision. Failure

_____

[2]    The ALJ decision referred to Exhibit 3E which included education records from J. Salimore and Exhibit 10E which contained education records from Bonnie Clark, Lynn Bancroft and Melissa Martin.

to mention each provider or teacher by name is not in and of itself legal error.  The ALJ's rational was apparent from his decision and the ALJ cited evidence in the record which contained evidence from the unnamed sources.  Therefore, the ALJ did not err in his evaluation of the opinion evidence in the record and remand is not recommended.

**D.    The ALJ's Finding in the Functional Equivalence Domains**

Plaintiff argues the ALJ erred in his assessment of the domains (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others, and (4) caring for oneself.  (Dkt. No. 12 at 16-22 [Pl.'s Mem. of Law].)  Defendant argues Plaintiff's argument repeats her earlier argument; that the ALJ should have afforded greater weight to Dr. Ahmad's medical source statement and greater weight to certain teacher evaluations.  (Dkt. No. 16 at 12 [Def.'s Mem. of Law].)

For the reasons stated in Part IV.B-C, the ALJ afforded proper weight and duly considered the opinion evidence in the record; therefore, substantial evidence supported the ALJ's conclusion in the four domains.  For example, the ALJ relied on the medical opinion evidence provided by Dr. Noia and school records which indicated Plaintiff was capable of learning at her grade level and was in regular education classes.  (T. 30-31.)  The ALJ also relied on treatment notations from Dr. Ahmad and Ms. Alban indicating Plaintiff's attention was fair to very good, as well as teacher observations that Plaintiff had an age appropriate ability to follow directions and stay on task.  (T. 31.)  The ALJ did not err in his evaluation of the separate domains because substantial evidence supported his conclusions, namely, the ALJ relied on the medical source opinion of Dr. Noia, treatment notations from Plaintiff's treating mental health providers, and teacher evaluations.

Although Plaintiff provides evidence from the record in support of a different conclusion, that alone is insufficient to recommend remand, because the record contains substantial evidence to support the ALJ's conclusion. *See Richardson*, 402 U.S. at 401; *Zabala*, 595 F.3d at 408; 42 U.C.S. § 405(g) (Commissioner's findings are "conclusive" if supported by substantial evidence); *see also Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) ("It may well be that reasonable minds would disagree as to whether [the child] is disabled, but it is clear from the record that the ALJ did consider [the evidence] and simply reached a conclusion, supported by substantial evidence, with which [plaintiff] does not agree.")

## E.     Credibility

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant

has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id., see* 20 C.F.R. § 416.929(c)(3)(i)-(vii). Further, "[i]t is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (citing *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir.1983)).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. (T. 27.)

Plaintiff merely argues "it is difficult to discern why the ALJ found that the testimony given at the hearing was not fully credible." (Dkt. No. 12 at 23 [Pl.'s Mem. of Law].) First, the ALJ outlined the proper credibility procedure under the Regulations and properly conducted the two step analysis. (T. 27.) Second, the ALJ provided a

discussion of the objective medical evidence in the record and teacher evidence in the record which he reasoned did not support I.C.'s allegations. (T. 27-28.) The ALJ's decision clearly indicated that he followed the Regulation in making his credibility determination. In accordance with the factors outlined in 20 C.F.R. § 416.929(c)(3), the ALJ provided a summary of Plaintiff's testimony; further, the ALJ discussed treatment received by Plaintiff for her impairments, including mental health treatment and medication. (T. 27-29.) Therefore, the ALJ conducted a proper credibility analysis in accordance with the Regulations.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:       January 12, 2016

William B. Mitchell Carter
U.S. Magistrate Judge